We have a number of cases on the DACA Today schedule for oral argument. The first is we have about 16, 17 cases that have been consolidated under clause number 16-50677, United States of America v. Melissa Quintanilla. We're going to begin with that. Good morning. Joseph Gay from the Western District of Texas. May it please the Court. This case involves 17 consolidated appeals in which the District Court chose to apply for Amendment 782 in cases where each of those defendants had been sentenced as a clear offender. We essentially appealed in each one of these cases. They're all similarly situated. Factually, there are minor differences. However, the legal issue and the legal reasoning in each of these cases is virtually identical. And it comes down to two real questions as far as from the government's perspective. Number one, was their sentence as a clear offender based on a guideline amendment that was retroactively applicable? And number two, did the District Court have the authority under 3582C to sentence, allow for a sentencing reduction in cases where a defendant had been sentenced as a clear offender? We believe that this Court's opinion in a case called Anderson is controlling authority on this issue. And numerous panels that set forth in our brief have consistently applied Anderson in the 782 context, holding that where a sentence was determined based on the clear offender guideline, that it was not based on a sentence that was subsequently reduced pursuant to 782 because the drug quantity tables in 2D1.2 are no longer applicable. Essentially, that vehicle is not available. The District Court only had authority to modify a defendant's sentence if it was based on a range. And this Court has construed that language in many different opinions, basically saying it had to be derived from. And although appellant, appellees, excuse me, have made in their brief a considerable reference to the fact that the Court made a factual finding that it was based on, that finding is simply not supported by the record, and as a matter of law, must fail. The defendant was not sentenced on a range that was retroactively lowered by the sentencing guidelines, and therefore she would be ineligible for a reduction. In this Court's opinion in Anderson, the Court held the guideline amendments lowering offense levels for crack cocaine cases do not apply to prisoners sentenced as career offenders, finding that they did not derive from the amount of crack cocaine involved in the offense, and therefore, in each one of those cases, they have been rejected. But Banks is even more on point, isn't it? It's based on this particular amendment. There are two cases, Banks and Barber. Judge Graves, in fact, was one of the members of the Barber panel opinion, where it specifically said that exact thing Judge States, and that is that essentially Anderson controls, and that Freeman, the Supreme Court's decision in 2011, these are all much later than 2011, of course, earlier this year, 2017, had no direct applicability to changing the scheme for which we would determine whether a district court has jurisdiction to entertain a reduction. For Freeman, the district court has jurisdiction to determine if there is an applicable vehicle to allow for a reduction, and only then, if so, would a reduction be allowed. And so appellants, excuse me, appellees attempt to argue that the district court would have that jurisdiction after Freeman, and this court has consistently held that Freeman is in opposite to sentences derived under the career offender guideline. So, in Dillon, the United States Supreme Court talked about how 3582C is a very narrow, limited exception to the finality of judgment, that a district court does not have jurisdiction, it's not a plenary re-sentencing either, to go in and tinker with imposed sentences at any time after the fact, unless there is a specific grant pursuant to, for example, a retroactively applicable guideline amendment, like 782. And so, what this case calls into question, and why this was such an important case, and why we sought to appeal, is that the finality of judgments, and the applicability of the restraints under 3582, which is, in our view, very narrow, and the Supreme Court's view, very narrow, is essential to our proper the requirements of 1B1.10, and all of the structures in place, that would throw our system into chaos. Fortunately, in this limited context, no other, in our division, no other district court had construed the applicability of 782 to extend a career offender provisions, and so we had this finite group that we sought to appeal. Essentially, we believe that, number one, Anderson is controlling, number two, that the district court does not have authority to go outside of the rules and procedures set forth in our brief regarding the applicability of 3582C, except within the narrow confines. And so, that is essentially the government's two principle arguments, and we would request that in each of the 17 cases, that this court would reverse the district court's judgments, amending the defendant's sentences in each of those cases. Thank you, counsel. Pelley? May it please the Court, Judy Maidwell, with the Federal Public Defender's Office, on behalf of the defendant, Appellees. The Sentencing Commission is authorized to review its guidelines, to amend those guidelines, determine whether to make them retroactive, and determine the extent of retroactivity. In Amendment 782, the Sentencing Commission reduced the offense levels for all drug offenses by two levels. I say all, there were a few exceptions. Judge Janell, in the Western District of Texas, decided to review all of the cases in, under his jurisdiction, these in particular out of Midland. He and his probation officer reviewed all of the cases themselves. He granted quite a few reductions. He wanted to grant reductions for these 17 individuals. The government opposed, because he would check with the government before he would grant any of the reductions. Government opposed, and so the court appointed the Federal Public Defender's Office to represent these individuals. He asked for briefing from all the parties. He held hearings. He had the defendants brought in from their locations of incarceration. He reviewed all of the records, and he then issued orders in each of these cases in which he found that the sentence that he imposed had been based on the drug guideline, 2D1.1. The difference between these cases and Anderson is that all of these cases, while it's true they were found to be career offenders, they all received sentences below the career offender guideline. The vast majority of them received sentences below based on substantial assistance to the government. Some of these people continued to provide substantial assistance over the years, testifying. They got additional reductions under 3553E, additional reductions under Rule 35B, and Judge Janel believed that these people were eligible for reductions, that they deserved reductions, and he granted the reductions. He had the authority to do so under 3582C2, which gives the district court the authority to reduce a sentence that the court based on a guideline that was subsequently lowered. Here, Judge Janel determined that he had based these sentences on the drug guideline. The Supreme Court... The distinction you're making with Anderson, hadn't some circuits after the crack amendment ruled similar to what you're proposing, but then the commission came in and resolved the split that existed in favor of the circuits that hadn't allowed amendments in those situations? That is correct, Your Honor. So how do you get around what the commission did in response to that split? The way that the commission changed that or resolved the conflict was it added an application note to the commentary, Note 1A, and as we know from Stinson and Labonte, commentary is not One of our positions is that it conflicts with 3582C2 in that the decision on whether a sentence was based on a guideline range that was subsequently lowered is given to the district court. The district court is in the best position to determine what they based, what he based his sentence upon, and so in that way, the division in 3582C2, the district court gets to do what they get to determine what they sentenced under, which would determine eligibility. The Sentencing Commission has a lot of authority on these modification proceedings to decide whether to amend, whether to make it retroactive, and the extent of that retroactivity, but it can't take from the district court the ultimate authority of saying, I based this sentence on a guideline range that was subsequently lowered, and therefore, this individual is eligible under that first section of 3582C2. A secondary argument that I have on that has to do specifically with individuals who were, who got reductions for substantial assistance, and Judge Janell at these hearings kept referring to the fact that this was kind of a confluence of career offenders but people who had provided substantial assistance to the government, and so this was a great concern of his, and the Commentary Note 1A, if it is read to apply to people who provided substantial assistance, that's in conflict with a directive, congressional directive in 994N. Title 28 of the what the Sentencing Commission is supposed to do in terms of setting up the guidelines, it sets out what Congress's directives, a number of the directives to the Commission. One of those directives in 994N is that the Sentencing Commission assure that people who provide substantial assistance to the government get lower sentences, and that directive is actually evident in some parts of 1B1.10. So, for example, in 1B1.10B2, the Sentencing Commission limited reductions below the amended guideline range. It used to be that if you got a departure of any kind, you get a comparable reduction, and then the Sentencing Commission came in and said, no, you can't except for one exception, substantial assistance. In 1B1.10C, the Sentencing Commission sets out that you can't get a sentence below a statutory mandatory minimum except for substantial assistance, if there's a 3553e motion file. So the vast majority of these individuals provided substantial assistance, and so if a commentary there in 1A is read in such a way that it prohibits a lowering of a guideline range based on substantial assistance, that's contrary to the directive that the Sentencing Commission was given. But there's no question if these folks were sentenced under the drug guideline instead of the career offender guideline, even if they got on substantial assistance, they would have gotten a benefit from this amendment. I mean, people all over the circuit were in that situation and were getting resentenced. That is correct. That is correct. This is a—Judge Janel recognized this is a difficult situation because many times the people who are designated as career offenders, their guideline ranges—one of these individuals, the drug guideline was 30 to 37 months, but designated as a career offender based on prior drug offenses, it was 181 to 235. But then they continued to provide assistance to the government, and so Judge Janel really—it's analogous to the situation that the court looked at, the Supreme Court looked at in Freeman, which was the question of, is a person who's sentenced under a binding 11C1C plea agreement ever eligible for a reduction under 3582C2, or are they categorically barred? And the court there said, they're not categorically barred. You have to look at where that sentence—agreed sentence came from, and if it was based on a guideline range, then they're eligible. So the question here is, is someone who is sentenced under the career offender guideline ever eligible for a reduction under 3582C2, or are they categorically barred? And the answer should be that the same analysis, the same reasoning that the Supreme Court used in Freeman, and that is you look and see what the sentence was, the sentence imposed, what was the sentence based on? And here, the district court, after reviewing—I mean, he took an incredible amount of time on these cases. After reviewing everything, he found that these cases were based on the drug guideline, and in accordance with that, he reduced by two levels the offense, the current offense level for the sentences that the individuals were currently serving. Don't our cases prevent the judge from finding that these sentences were based on anything other than the career criminal guideline? I mean, how is his determination that these sentences are based on the drug guideline? Why is that not inconsistent with our case law? The court's case law has primarily dealt with situations where someone was saying, hey, I was actually a crack cocaine defendant, and so I should get a reduction. And the district court said, no, you were sentenced under the career offender guideline, so you're not eligible. You said your sentence was based on the career— Right, right, and so you're not eligible. The difference here is that we have a district court judge who's reviewed everything, and he said, I based these sentences on the drug guideline. So in Freeman, in the concurring opinion, Judge Sotomayor, Justice Sotomayor talked about based on as being foundational, as being part of, but a very important part of the sentence that was imposed. In this case, we're talking about people who were identified as career offenders, but immediately sentenced below that. Immediately sentenced, many of them immediately sentenced substantially below the career criminal guideline. But if you had started with the drug guideline, that reduction would have brought the sentence down even lower, wouldn't it? Yes, that is correct. That is correct. Also, kind of an analogy, I know that Your Honor, you had mentioned that banks seems to be on point and against our position on this. One of the interesting parts about the banks case was there the court said, you look at the guideline range of the sentence that the defendant is currently serving, and when you determine whether they're eligible for the reduction. Now, banks was procedurally different. Banks was actually sentenced under 2D1.1 on the offense level because his drug offense level was higher than the career offender, 4B1.1 level. And so he was sentenced under that with the criminal history category six. The sentencing commission reduced the crack cocaine guidelines. He filed a 3582C2 motion, and the district court judge reduced to the career offender guideline and stopped there. Then there was a subsequent reduction of the crack cocaine guidelines, and banks filed another 3582C2. And he said, listen, I was originally sentenced under the drug guideline. I was sentenced under 2D1.1. So I should still be eligible. And this Court said, no, you look at the guideline of the sentencing range that the defendant is currently serving. And that's what Judge Genel did in these cases. These individuals some of them received Rule 35 reductions years after the original sentencing. So he looked back over years of his resentencing, sentencing and resentencing of these individuals, and said, I based these sentences on the drug guideline. And I believe that the district court judge is the best position to make that determination, and that it's subject to deference. Were there any of these he looked at and decided, no, I actually based it on the career offender guideline, so no modification? I don't know the answer to that, because we weren't involved until he got a no from the government. So it is quite possible. So if he wasn't initially planning to do a reduction, you wouldn't have been? Exactly. We wouldn't have been involved. He reviewed them all himself. There were some that he did not grant. I know that because just from reading the rehearing transcripts, he talked about the process that he went through. He said, I reviewed like a thousand of these, but he didn't, I think he said he granted like 900 of them. So I don't know how accurate those numbers are. That's not career offender. No. They're just talking about it. Right, right. But clearly that indicates that there were some he did not grant. But I can't provide information as to whether there are any career offenders that he did not grant. I do want to have, if I could, a fallback position. And so if the court, we believe that the commentary note 1A does not apply, is not binding in any of these cases, because it attempts, if it's applied to limit the district court's authority to determine eligibility, what he based the sentence on. Fallback position, as I said, it certainly cannot be applied to the people who gave substantial assistance, because that directly conflicts with congressional directive. Further fallback position. The specific language in commentary note 1A says you consider the offense level and criminal history category before consideration of any departure under the guidelines manual or variance. Many of these individuals received reductions under statute 3553E and also by rule, under rule 35. And so the plain language there, the commentary would not apply. Judge Janel understood that this was a difficult issue that he was facing. That's why he took as much time as he did to review all these, all the facts of the cases. He wanted to give these individuals the reductions. He gave these, he believed they deserved the reductions. He gave these individuals, found that they were based on 2D1.1. He gave the two levels off from the drug guideline. I would note that currently four of these individuals have been released from prison. Three of them are successfully on supervised release. The fourth one is already in a halfway house. We would ask that this court affirm the sentences as modified by Judge Janel. Unless there are any further questions? You'll agree that there's no agreed-upon definition of what based on means? Yes, I would agree that that's true. I think that's one of the things that... So when Judge Janel said he based it on, that was his determination, determination about what based on meant to him? Right. And he used it, he analogized it to the, what the Supreme Court did in Freeman. How they looked at where you have this binding agreement on a particular sentence, you know, could that ever be based on? And so he used that same analogy in looking at these cases and said, can they ever be based on? Thank you, counsel. Rebuttal. Regardless of whether a defendant received a reduction for substantial assistance, either through 5K or 35, it is clear that the appellees in this case cannot escape the language that it's... C2 specifically provides that it has to be based on a sentencing range that was lowered. These reductions based on substantial assistance and cooperation were vehicles by which cooperating individuals were properly rewarded for their substantial assistance. None of that alters the fact that at the time their sentences were calculated, if you look at the pre-sentence reports, at the time the sentences were imposed, they were imposed and the district court adopted the PSR that set out a framework that shows that their guideline range was based on their status as a career offender. All of the arguments that a framework that this court has consistently adopted and virtually every court of appeals that has looked at this issue has adopted. There were amendments that did change and specifically eliminated a interpretation that appellees were essentially asserting, and that is the Rivera case that's cited in their brief was subsequently abrogated by amendment, which specifically cabined district court discretion in this area. If there are no further questions, yield back my time. Thank you, counsel. The court will take this matter under advisement. We'll proceed to our next case.